854 P.2d 1194

**Arthur E. ANDERSON, Co–Personal Representative of the Estate of Cornelius John Tempas, Plaintiff–Appellant,**

v.

**PREFERRED STOCK FOOD MARKETS, INC., an Iowa corporation;  Gerald L. Pearson and Richard O. Wikert, Defendants–Appellees.**

No. 1 CA–CV 91–032.

Court of Appeals of Arizona,
Division 1, Department A.

April 29, 1993.

Reconsideration Denied July 2, 1993.

Newman, Ahern, Chambliss & Banen by Lisa Perry Banen, Phoenix, for plaintiff-appellant.

Lieurance, Wright & Ray, P.C. by Kevin D. Ray, Joseph Maisto, Phoenix, for defendants-appellees.

## OPINION

TOCI, Presiding Judge.

Plaintiff appeals from the trial court's order granting defendants a new trial after an earlier ruling by another trial judge excluding defendants' parol evidence and granting summary judgment for the plaintiff. The main issue is whether parol evidence is admissible to show that a written personal guaranty signed by defendants was not fully integrated and to prove the existence of an oral condition precedent to the performance of the written guaranty.

We conclude that the Corbin rule of integration announced in *Darner Motor Sales Inc. v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 682 P.2d 388 (1984), and other Arizona cases, required the trial judge granting summary judgment to consider the prior negotiations and discussions of the parties to ascertain whether the written guaranty was a completely integrated agreement. We also conclude that the rule allowing a trial judge to admit parol evidence that a fully executed, unconditional contract is subject to an oral condition applies to a written guaranty. Finally, we conclude that because the plaintiff did not rely upon the dead-man statute to oppose the grant of a new trial, that issue cannot be raised on appeal. We affirm the grant of a new trial.

### FACTS AND PROCEDURAL BACKGROUND

Preferred Stock Food Market, Inc. ("Preferred"), a corporation operating a retail meat store in Mesa, initially had four shareholders. Each shareholder invested $50,000 in the company and individually guaranteed at least $50,000 of the original corporate loans of $200,000 made to Preferred by American National Bank.

The plaintiff's decedent, Cornelius John Tempas ("Tempas"), wanted to invest in Preferred. Following negotiations with the shareholders, Tempas purchased $10,000 worth of stock and loaned the corporation $40,000, for which he received a promissory note from the corporation.

On the same day, two of the shareholders, defendants Gerald L. Pearson ("Pearson") and Richard O. Wikert ("Wikert"), executed the personal guaranty which gives rise to this appeal. In the guaranty, Pearson and Wikert promised to individually guarantee payment of the $40,000 note given to Tempas by the corporation. According to the terms of the personal guaranty, Pearson and Wikert also promised to repurchase within twelve months from Tempas the $10,000 worth of stock.

Although the guaranty is unconditional in its terms, defendants offered admissible

evidence by affidavit that the guaranty was in fact conditional. Defendants established that they agreed to allow Tempas to purchase Preferred's stock only if he made a total contribution to Preferred of $100,-000. According to the defendants' evidence, the sum of $100,000 was calculated to match each shareholder's cash investment of $50,000 and personal guarantee of at least $50,000 of the corporate note to American National Bank.

The defendants further established that because of Tempas' poor health, the parties agreed that they would allow Tempas to leave the business in one year and defendants would limit his investment exposure in the business to $50,000. In other words, although Tempas was required to contribute $100,000 to the corporation, he was to be at risk for only $50,000. To accomplish this result, Pearson and Wikert signed the personal guaranty.

Defendants' affidavits also establish, however, that Tempas agreed that Pearson and Wikert's performance under the guaranty was expressly conditional upon Tempas' payment of the full capital investment of $100,000. Pearson and Wikert assert that Tempas made the $50,000 contribution, for which he received a corporate note and 10,000 shares of Preferred stock, and that he promised that he would secure a loan from the American National Bank for the remaining $50,000 to fulfill his $100,000 commitment.

Finally, the defendants' affidavits establish that in March of 1987, they discussed with Tempas the status of the American National Bank loan, and he advised them that the loan had been approved. According to defendants, they then elected Tempas as chairman of the board of directors. The affidavit of defendant Pearson states that after the March meeting, the bank contacted him about Tempas finalizing the loan documents, and Pearson advised a bank agent that Tempas was very ill and had been hospitalized. Tempas died before signing the loan documents.

After Tempas' death, the co-personal representative of Tempas' estate demanded payment under the note and guaranty.

When neither the corporation nor the shareholders paid, the personal representative filed suit against the defendants. Later, plaintiff filed a motion for summary judgment, arguing that the trial court could not consider defendants' affidavits in support of their response to the summary judgment motion because they were inadmissible under both the parol evidence rule and Arizona's dead-man statute, Ariz.Rev. Stat.Ann. ("A.R.S.") section 12–2251.

After a hearing, the trial court granted plaintiff's motion. The court found that although there is "arguably a condition precedent to the validity of the Guaranty in question, ... there is no written document to support this proposition." It also found that because "[t]he Note and Guarant[y] are unambiguous ... irrespective of the intent of the parties, they cannot be modified through the introduction of parol evidence."

The trial court then entered judgment against Preferred on the promissory note for $40,000, plus interest. The trial court also entered judgment against Pearson and Wikert for $10,000, plus interest, representing the repurchase of Tempas' shares of Preferred stock, and $40,000, plus interest, against defendants Pearson and Wikert on their personal guaranty of the promissory note in the same amount.

Both Pearson and Wikert filed a motion for a new trial pursuant to Rule 59(a)(8), Arizona Rules of Civil Procedure, alleging that the trial court erred in finding that the parol evidence rule barred their supporting affidavits. Another trial judge heard the motion and, without findings of fact or conclusions of law, granted a new trial. Plaintiff then filed a timely appeal from the grant of a new trial. We have jurisdiction pursuant to A.R.S. section 12–120.21(A).

### DISCUSSION

**A. The Trial Court Should Have Admitted Evidence Of The Surrounding Circumstances To Determine Whether The Guaranty Was Integrated**

■ When an issue exists as to whether a negotiated contract is integrated, Arizona

law requires a trial court to receive evidence on all of the surrounding circumstances. Thus, in granting a new trial, the trial judge properly considered the prior negotiations and discussions of the parties to ascertain whether the written guaranty was a completely integrated contract.

### 1. Summary Judgment Was Not Appropriate; the Trial Court Properly Granted a New Trial

■ Here, although Judge Katz granted summary judgment for plaintiff, Judge Peterson later granted a new trial. A new trial is proper where "the verdict, decision, findings of fact, or judgment is not justified by the evidence or is contrary to law." Ariz,R.Civ.P. 59(a)(8). The trial judge has broad discretion in granting a new trial. *Glendale v. Bradshaw*, 114 Ariz. 236, 238, 560 P.2d 420, 422 (1977). We will not disturb an order granting a new trial, particularly one based on Rule 59(a)(8), "unless the probative force of the evidence clearly demonstrates that the decision of the trial judge is a manifest abuse of discretion." *Carlton v. Emhardt*, 138 Ariz. 353, 357, 674 P.2d 907, 911 (App.1983). Based on the record and the applicable law, we conclude that Judge Peterson properly granted a new trial for defendants.

### 2. The Trial Court Properly Determined That an Issue Existed as to Whether the Guaranty Was Fully Integrated

■ The question of integration and interpretation of a contract is initially one for the court and is decided as a preliminary question before applying the parol evidence rule. Arthur L. Corbin, 3 *Corbin on Contracts* ("3 Corbin"), § 595 at 571 (1960); Restatement (Second) of Contracts ("Restatement") § 210(3) at 118 (1981). A completely integrated contract is a contract adopted by the parties as a complete and exclusive statement of the terms of the contract. Restatement § 210(1) at 117. It represents a "finalized obligation." *Aztec Film Prod. v. Tucson Gas & Elec. Co.*, 11 Ariz.App. 241, 243, 463 P.2d 547, 549 (1969). In Arizona, extrinsic evidence, including negotiations, prior understandings, and subsequent conduct may be considered

to determine the parties' intent with regard to the integration of a contract and its purpose. *Darner*, 140 Ariz. at 393, 682 P.2d at 398 (citing 3 Corbin § 582); *see also Burkons v. Ticor Title Ins. Co. of Cal.*, 168 Ariz. 345, 351, 813 P.2d 710, 716 (1991); *Smith v. Melson, Inc.*, 135 Ariz. 119, 122, 659 P.2d 1264, 1267 (1983); *American Nat. Fire Ins. v. Esquire Labs of Ariz.*, 143 Ariz. 512, 523, 694 P.2d 800, 811 (App. 1984).

■ Thus, after considering extrinsic evidence, the court must first determine whether a contract exists. 3 Corbin § 577 at 385. If the court concludes that a contract does exist and that it is embodied in a fully integrated written contract, it may enforce the contract as written. On the other hand, if the court concludes that the written contract is not fully integrated, it may include other additional and consistent terms, including oral conditions, as part of the contract. *See* 3 Corbin, §§ 582–583, 595; *see also Darner*, 140 Ariz. at 393, 682 P.2d at 398; *Esquire Labs*, 143 Ariz. at 523, 694 P.2d at 811.

■ Here, the trial court did not abuse its discretion in granting defendants a new trial because the evidence demonstrates that an issue exists as to whether the written guaranty is a completely integrated contract. The defendants' affidavits state that the parties agreed that Tempas would contribute $100,000 to match the investment of the other shareholders in Preferred. The defendants' affidavits also state that the parties agreed that if Tempas would contribute $100,000 to the corporation, Pearson and Wikert would guarantee payment of $50,000. One can conclude from the defendants' affidavits that Pearson and Wikert were not required to perform the terms of the written guaranty unless Tempas contributed $50,000 in addition to the $50,000 he had already contributed to the corporation. Furthermore, extrinsic evidence from disinterested witnesses corroborates the defendants' affidavits. Through the affidavits of bank officers, the defendants established that Tempas applied for a $50,000 loan from the American Na-

tional Bank and that he said he would use the loan proceeds to *match the investments of the existing shareholders* in Preferred.

Under these facts, the rule of integration referred to above requires the trial court to receive evidence of the surrounding circumstances to determine whether the written guaranty was a fully integrated contract. Because the defendants established that performance of the written guaranty was subject to the oral condition that Tempas invest a total of $100,000 in the corporation, the trial court could have reasonably determined that the guaranty was not fully integrated. "Where the parties to a written agreement agree orally that performance of the agreement is subject to the occurrence of a stated condition, the agreement is not integrated with respect to the oral condition." Restatement § 217 at 141. Although the trial court's order did not make findings, we presume that the trial judge made findings and conclusions sufficient to sustain the order granting a new trial. *Coronado Co., Inc. v. Jacome's Dept. Store*, 129 Ariz. 137, 139, 629 P.2d 553, 555 (App.1981) (implied in every judgment are the findings and conclusions necessary to sustain it).

■ Plaintiff argues, however, that the principles in *Darner* only apply to standardized agreements. We disagree. The supreme court in *Darner* clearly established that Corbin's rule of integration applies to negotiated contracts. *Darner*, 140 Ariz. at 393, 682 P.2d at 398. The supreme court later made clear that it never intended to limit the rule of integration to the precise facts presented in *Darner*. *Gordinier v. Aetna & Sur. Co.*, 154 Ariz. 266, 272, 742 P.2d 277, 283 (1987).

Furthermore, before *Darner* was decided, Arizona followed the Corbin rule of integration in *Smith v. Melson*, 135 Ariz. 119, 659 P.2d 1264 (1983), a case in which the parties signed a negotiated contract. There, our supreme court stated that, "[a] contract should be read in light of the parties' intentions as reflected by their language and in view of all the circumstances." *Id.* at 121, 695 P.2d at 1266.

Since *Darner*, in *Esquire Labs*, 143 Ariz. 512, 694 P.2d 800, Division Two of this court applied Corbin's rule of integration to a negotiated contract. In *Esquire Labs*, the court considered the policy exclusion provision in an insurance policy to be a "negotiated" provision because the parties discussed it prior to entering the contract. *Id.* at 523, 694 P.2d at 811. Thus, following *Darner*, this court held that the trial court erred in refusing to admit evidence of the surrounding circumstances to determine the parties' intent concerning the integration of the contract. *Id.*

In *Darner*, our supreme court adopted Restatement section 211 (1981)—allowing trial courts to consider a party's "reasonable expectations" to resolve disputes in adhesion contracts—because it would be "anomalous" for Arizona to follow the Corbin view of integration for negotiated contracts but not for standardized agreements. *Darner*, 140 Ariz. at 393, 682 P.2d at 398. The court explained that Arizona has always followed the Corbin view that "the interpretation of a *negotiated* agreement is not limited to the words set forth in the document." *Id.* (emphasis supplied). Thus, although *Darner* applies Restatement section 211 to standardized contracts, *Darner* does not confine Corbin's rule of integration to standardized contracts.

## B. The Court Should Have Admitted Parol Evidence of the Existing Condition

■ The plaintiff argues that defendants' extrinsic evidence that the personal guaranty is subject to a condition is at odds with the purpose of the guaranty. We disagree. The oral condition is consistent with the terms of the written guaranty and is *something that a reasonable person could leave to an oral agreement.*

■ Although the trial court must examine all the surrounding circumstances to determine whether a written contract is fully integrated, this does not answer the question as to what extrinsic evidence is admissible to determine the extent of integration. Parol evidence is generally inad-

missible if it directly contradicts an express term of a written contract or is directly contrary to the entire purpose of the written contract. 3 Corbin § 582 at 457 and § 583 at 468–69; Restatement § 215 at 136; *see also DeCarlo v. MCSA, Inc.*, 163 Ariz. 23, 25, 785 P.2d 592, 594 (App.1988) (where contract said policy effective first day of month following waiting period, parol evidence inadmissible to show agent stated policy effective first day following waiting period); *Pinnacle Peak Developers v. TRW Inv. Corp.*, 129 Ariz. 385, 388, 631 P.2d 540, 543 (1980) (Supp.Op.) (where contract required exercise of option by June 15, 1977, parol evidence inadmissible to show alleged representation that deadline would not be strictly enforced).

On the other hand, when parol evidence does not directly contradict the express terms of the writing but is generally consistent with the writing, it may be admitted. 3 Corbin § 583 at 475 (written contract does not prevent the proof of additional, consistent oral collateral terms that a reasonable and prudent person may be expected not to put in writing); Restatement § 216 at 137 (consistent additional agreed term which might naturally be omitted from the writing is admissible); *see also Jamison v. Southern States Life Ins. Co.*, 3 Ariz.App. 131, 135, 412 P.2d 306, 310 (1966) (agreement by payee of note to make mortgage loans to maker of note was not barred by parol evidence rule because such agreement would not normally be placed in note).

Here, according to defendants' affidavits, the parties agreed that if Tempas would put $100,000 into the corporation, Pearson and Wikert would limit Tempas' investment risk to $50,000. Thus, the defendants' affidavits establish that performance of the personal guaranty was subject to the condition that Tempas contribute $100,000 to the corporation. The alleged oral condition is neither directly contradictory to the express terms of the guarantee nor inconsistent with its purpose. We conclude that the trial court could have determined that the alleged oral condition is something that reasonable people might very well leave to an oral agreement. 3 Corbin § 583 at 475.

Our conclusion is buttressed by the fact that the parties obviously never reduced their entire agreement to writing. The personal guaranty[1] refers to a "subscription agreement signed by C.J. Tempas with Preferred Food Market Inc." Despite this reference, the record does not disclose that the parties ever had anything other than an oral subscription agreement which they honored in transferring the Preferred stock to Tempas.

Plaintiff relies on Arthur L. Corbin, *Conditional Delivery of Written Contracts*, 36 Yale L.J. 443, 458 (1927), to argue that the admissibility of parol evidence to prove a condition precedent should hinge on whether the contract is unilateral or bilateral. He asserts that if the expressed condition prevents the parties from performing mutual promises, parol evidence of a condition is admissible without any injustice to either party. But, according to plaintiff, where one party to a unilateral contract has already given a specified consideration, there is a danger of fraud or mistake in allowing the other party to give proof of an extrinsic condition which reduces the value of the agreed upon exchange.

Applying the above argument to this case, the plaintiff claims that "[h]ad the guarantors promised to guarantee the Note if Tempas promised to convey an asset to the corporation, the contract would have been bilateral and parol evidence would be admissible." On the other hand, plaintiff argues that "where Tempas has fully performed his obligation by delivering $50,000 to Preferred ... the [g]uarantee is unilat-

---

**1.** The personal guaranty states as follows: "The undersigned, Gerald L. Pearson and Richard O. Wikert, hereby individually guarantee to C.J. Tempas that twelve (12) months from the date of the subscription agreement signed by C.J. Tempas with Preferred Stock Food Market, Inc. they will purchase the ten thousand (10,000) shares of Preferred Stock Food Market, Inc., at $1.00 a share. In addition, the undersigned, Gerald L. Pearson and Richard O. Wikert, individually guarantee the forty thousand dollar ($40,000) corporate note given to C.J. Tempas by Preferred Stock Food Market, Inc."

eral and no parol evidence may be admitted to avoid it." We disagree. Plaintiff's argument that Tempas has fully performed and that the guarantee is a unilateral contract assumes the very issue in this lawsuit; that is, what is the integrated contract? Until the trial court hears evidence of the circumstances surrounding the execution of the personal guaranty and decides what constitutes the integrated contract, it cannot determine the nature of the contract or whether Tempas fully performed the contract. 3 Corbin § 588 at 526–29 and § 595.

■ Plaintiff also argues that because of the inherent nature of a written guaranty, which is presumed to contain the entire agreement of the parties, parol evidence is not admissible. Arizona, however, has always allowed a trial court to admit parol evidence that a contract, fully executed and unconditional on its face, is subject to an oral condition precedent which does not vary or contradict the terms of the written contract. *Merritt v. Walter Pocock Associates Brokers, Inc.*, 105 Ariz. 392, 393, 465 P.2d 585, 586 (1970); *United States v. Fidelity & Guar. Co. v. Olds Bros. Lumber Co.*, 102 Ariz. 366, 369, 430 P.2d 128, 131 (1967); *see also* 3 Corbin § 589 at 530. We see no valid reason why this rule should not apply to written guaranties. *See Halliburton Co. v. McPheron*, 70 N.M. 403, 374 P.2d 286 (1962) (parol evidence admissible to show that a corporate officer's unconditional guaranty would not become effective until another corporate officer executed a similar guaranty).[2] Thus, although the guaranty in this case is fully executed and unconditional on its face, the trial judge who granted plaintiff summary judgment should have considered defendants' parol evidence to determine if the guaranty was subject to an oral condition precedent that did not vary or contradict the terms of the guaranty. Presumably, the trial judge who

granted the defendants a new trial found that the guaranty was subject to this condition. *Coronado*, 129 Ariz. at 139, 629 P.2d at 555. Because admissible evidence reasonably supports this finding, we find no abuse of discretion. *Glendale*, 114 Ariz. at 238, 560 P.2d at 422.

**C. Because the Plaintiff Did Not Raise the Arizona's Dead-man Statute in Opposition to the Defendants' Motion For New Trial, It Cannot be Considered on Appeal**

■ Finally, plaintiff argues that the trial court erred because Arizona's dead-man statute bars defendants' supporting evidence. This argument is without merit. Although plaintiff raised the dead-man statute in his motion for summary judgment, he did not raise the statute as a defense to defendants' motion for a new trial. Accordingly, the trial court granted a new trial based solely upon the parol evidence issue. Plaintiff cannot seek to reverse an order granting a new trial on a ground that was not considered by the trial court. *Santanello v. Cooper*, 106 Ariz. 262, 263–64, 475 P.2d 246, 247–48 (1970) (appellate court is limited in its review of an order granting a new trial to considering only those grounds specified in the order); *Boudreaux v. Edwards*, 7 Ariz. App. 178, 181, 437 P.2d 430, 433 (1968) (appellant cannot argue grounds other than those stated in court order that granted a new trial). Therefore, we will not consider plaintiff's argument.

### CONCLUSION

For the reasons set forth in this opinion, we affirm the trial court's grant of a new trial. Appellees request attorneys' fees on appeal pursuant to A.R.S. sections 12–341.01 and –342. We grant the award of such fees in an amount to be determined

---

**2.** *See also wrrthwestern Bank v. Cortner*, 275 So.2d 317 (Fla.App.1973) (parol evidence admissible by guarantor to prove failure of consideration by bank in failing to maintain collateral under loan agreement which was alleged to be an oral condition to effectiveness of guaranty); *National Boulevard Bank of Chicago v. Corydon Travel Bureau, Inc.*, 95 Ill.App.2d 281, 238

N.E.2d 81 (1968) (parol evidence admissible to show plaintiff required to perform number of acts before quaranty was effective); *Beard v. Economy Fin. Corp.*, 409 S.W.2d 516 (Ky.1966) (shareholder who signed guaranty of corporate note could prove by parol evidence that guaranty was effective only if all shareholders and officers signed).

after appellees' compliance with Rule 21(c), Arizona Rules of Civil Appellate Procedure.

GRANT and O'MELIA,* JJ., concur.